IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTHER I. WARREN,

      Plaintiff,

vs.                                                                      No.  02cv0851  DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Warren's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed June 18, 2003, and fully briefed on September 3, 2003.  The Commissioner of Social Security issued a final decision denying Warren's claim for disability insurance benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse is well taken and will be GRANTED.

## I.  Factual and Procedural Background

Warren, now 50 years old, filed her application for disability insurance benefits on August 14, 2000, alleging disability since April 6, 1999, due to diabetes mellitus, chronic obstructive pulmonary disease, and the residual effects of a ruptured tendon repair in her right leg and foot. Tr. 13-14.  Tr. 14.  Warren has a high school education and  past relevant work as an assistant manager at a gas station and as a cashier/stocker.  Tr. 18.  On March 1, 2002, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Warren's impairments were severe

but did not meet or equal in severity any of the disorders described in the Listing of Impairments,

Subpart P, Appendix 1, Regulations No. 4. Tr. 14. Specifically, the ALJ reviewed Listings 1.00,

3.00, and 9.00. *Id.* The ALJ further found Warren retained the residual functional capacity

(RFC) "for a wide range of sedentary work activity." Tr15. As to her credibility, the ALJ found

Warren's "testimony and other evidence do not credibly establish functional limitations to the

extent alleged." *Id.* Warren filed a Request for Review of the decision by the Appeals Council.

On June 21, 2002, the Appeals Council denied Warren's request for review of the ALJ's decision.

Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review

purposes. Warren seeks judicial review of the Commissioner's final decision pursuant to 42

U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington*

*v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is

not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience. *Id.*

 In support of her motion to reverse, Warren makes the following arguments: (1) the ALJ's

RFC determination is contrary to the evidence and the law; and (2) the ALJ's reliance on the

Medical-Vocational Guidelines (the grids) was contrary to law.

**A.  RFC Determination**

 Warren contends the ALJ's RFC determination is contrary to the evidence and the law for

the following reasons: (1) the RFC finding is contrary to her treating physician's opinion; (2) the

RFC finding is inconsistent with her activity level; and (3) the ALJ's reliance on the opinion of a

non-examining doctor was error.

 **1.  Treating Physician Opinion**

 A treating physician may offer an opinion about a claimant's condition and about the

nature and severity of any impairments.  *Castellano v. Secretary of Health and Human Servs.*, 26

F.3d 1027, 1029 (10th Cir. 1994).  The regulations provide that the agency generally will give

more weight to medical opinions from treating sources than those from non-treating sources and

that the agency will give controlling weight to the medical opinion of a treating source if it is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).

Unless good cause is shown to the contrary, the Commissioner must give substantial weight to the testimony of the claimant's treating physician.  If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth.  *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984).  "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'"  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)(quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).  An ALJ may not substitute his own opinion for a medical opinion.  *See Sisco,* 10 F.3d  at 744.  However, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."  *Castellano,* 26 F.3d at 1029.

Warren contends the ALJ's RFC finding is contrary to her treating physician's opinion. On November 21, 2001, Dr. Matthew McKinley, Warren's treating physician, completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form.  Tr. 245-247. Dr. McKinley opined Warren could lift and/or carry 10 lbs., could occasionally (from very little up to 1/3 of an 8-hour day) lift and/or carry a maximum of 10 lbs, and could frequently (from 1/3 to 2/3 of an 8-hour day) lift and/or carry a maximum of 10 lbs.  Tr. 245.  Dr. McKinley noted that the medical findings supporting his assessment of Warren's ability to lift and/or carry was her "right posterior tibial tendon rupture seen at time of surgery."  *Id.*  As to Warren's ability to stand, Dr. McKinley opined Warren was capable of standing and/or walking a  maximum of 30 minutes in and 8-hour work day and without interruption 30 minutes.  Tr. 246.  Dr. McKinley

further opined Warren could only sit 2 to 4 hours in an 8-hour work day and a sit without

interruption for a maximum of 30 minutes. *Id.* The ALJ rejected Dr. McKinley's opinion,

stating:

> Dr. McKinley stated in his assessment form that Ms. Warren could not sit more than 2-4
> hours total in a workday with a maximum of 30 minutes at a time. Although Dr.
> McKinley did perform the reconstructive surgery on the claimant's right ankle in June
> 1999 and did the continued follow-up until December 1999, there are no other records
> reflecting further treatment by Dr. McKinley until his assessment dated November 21,
> 2001. Therefore, consideration must be given to what occurred between December 1999
> and November 21, 2001. On his last evaluation of the claimant, Dr. McKinley stated Ms.
> Warren had normal dorsiflexion and plantar flexion of the right foot. Although she
> complained of parathesias about the incision site, she had limited sensation to light touch
> on the medial and lateral plantar aspect as well as the dorsum of the right foot. He went
> on to say that she had good capillary refill and moderate valgus deformity with some loss
> of her arch. He assessed her work capacity at sedentary work at that time (October 19,
> 1999) due to her complaints of pain and swelling with ambulation. He also recommended
> that she be able to get up and move around every hour due to her complaints of pain and
> swelling with prolonged sitting. At that time he limited her standing to 30 minutes.
>
> It is noted that Dr. McKinley's residual functional capacity (RFC) evaluation is
> completely unrealistic. Not only is it inconsistent with his opinion at the time he was
> treating the claimant, it is inconsistent with the claimant's testimony. During the hearing,
> the claimant was asked to describe a typical day. She stated that she arises at 6:30 A.M.,
> gets her grandchildren off to school, cleans house, makes phone calls, gets husband off to
> his duties, reads, watches TV, walks, sews, crochets, knits, plays with computer and
> retires about 12:00 midnight or 1:00 A.M. The claimant did not indicate that she lies
> down, naps or rests for any significant time during the day. Indeed, the activities described
> by the claimant reflect a long, very active day. Certainly, it does not accommodate the
> RFC provided by Dr. McKinley. As a consequence, Dr. McKinley's RFC is given no
> significant weight.

Tr. 16-17. In this case, the ALJ set forth specific, legitimate reasons for disregarding Dr.

McKinley's opinion. The ALJ found Dr. McKinley's opinion was inconsistent with his opinion at

the time he was treating Warren and with Warren's testimony. The ALJ also noted and

considered that, at the time Dr. McKinley completed the Medical Assessment of Ability to do

Work-Related Activities (Physical) form, he had not seen Warren since December 1999. Under

the regulations, the length and nature of the treatment relationship and the frequency of

examination are two factors the ALJ should consider. *See* 20 C.F.R. § 1527 (d)(i).  The ALJ also

considered the treatment records of Drs. Pichler, Lewis, Ferraro, Bronitsky and Ogawa.  Tr. 17.

The ALJ noted that although these physicians had treating Warren repeatedly, they had "said little

about any further foot pain or significant functional limitations." *Id.*

Although Warren concedes the ALJ set forth specific, legitimate reasons for his decision,

Warren contends the ALJ failed to discuss that she took frequent breaks during the day to elevate

her leg because of pain and swelling.  However, the ALJ's decision did discuss this evidence.  The

ALJ noted:

> She testified at her hearing that she cannot lift more than 15-20 pounds, kneel or squat.
> She can sit for 40 minutes, stand 20-30 minutes and walk 15 minutes.  She is able to care
> for her personal needs, although she does need help dressing and getting in and out of the
> bathtub sometimes.  She is able to do housework and laundry and ironing at times.  She
> reads and watches television occasionally.  She very seldom shops alone, but goes with
> someone.  She must elevate her feet every couple of hours because they become numb.
> She has asthma attacks about once a day causing wheezing, and she must use an aspirator
> and rest.

Tr. 14.  However, the ALJ also found Warren's "testimony and other evidence [did] not credibly

establish functional limitations to the extent alleged." *Id.*  Based on the record as a whole and the

applicable law, the Court finds that substantial evidence supports the ALJ's finding that Dr.

McKinley's opinion was not entitled to much weight.

### 2.  Warren's Activity Level

Warren contends the ALJ supported his RFC finding with her ability to drive a car, to take

care of her personal needs, to care for her grandchildren, watch television, read, and to prepare

her own meals.  Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 6.  Warren further claims

"[i]t has long been the law in this Circuit that a list of activities that a claimant can perform is not

by itself sufficient evidence that the claimant can perform substantial gainful activity." *Id.*

7

In this case, the ALJ considered Warren's daily activities *along* with other factors to find she was not disabled.  Since statements regarding daily activities are evidence properly considered under the regulations, *see* 20 C.F.R. § 404.1529(a), this was proper.

### 3.  The ALJ's Reliance on the Opinion of a Non-examining Doctor

Warren claims the ALJ erroneously relied on the opinion of the non-examining Social Security physicians to support his finding that she can perform sedentary work.  Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 7.  Pursuant to Social Security Ruling 96-6p, findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources."  SSR 96-8p, 1996 WL 374180, at *1.  Moreover, an ALJ "may not ignore these opinions and must explain the weight given to this opinions in their decisions."  *Id.*

In this case, the ALJ disregarded Dr. McKinley's opinion and, citing to Social Security Ruling 96-6p, adopted the agency's physicians' opinions.  This was proper.  However, Warren contends the opinions of the agency physicians support a finding that she has an RFC for less than a full range of sedentary work and therefore he was "obligated to procure testimony from a vocational expert."  Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 9.  The Court agrees.

## B.  ALJ's Reliance on the Grids was Contrary to Law

On January 19, 2001, Dr Yoder completed a Physical RFC Assessment form.  Tr. 128-135.  Dr. Yoder opined Warren could occasionally lift and/or carry a maximum of ten pounds, frequently lift and/or carry a maximum of less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday but "must periodically alternate sitting and standing to relieve pain or discomfort.  Tr. 129.  Dr. Yoder also found Warren was

limited in her lower extremities in terms of her ability to push and/or pull.  In support of his

opinion, Dr. Yoder noted in his report:

> 48 y/o female alleging disability due to a right fibula fracture and ruptured tibia tendon
> with sensory loss and swelling in the right foot.  MER reveals that she suffered an injury to
> the right ankle at work on 2/23/99.  She was evaluated by an orthopedic doctor on
> 4/27/99.  X-rays at that time showed a healed lateral malleolus fracture.  Exam revealed
> swelling and tenderness superior and inferior to the medial malleolus consistent with a
> ruptured posterior tibial tendon.  This was surgically repaired sometime in June 1999.  She
> was seen in 10/99 for an impairment rating.  She had normal dorsiflexion and plantar
> flexion of the right foot.  She complained of parathesias about the incision site.  She has
> limited sensation to light touch on the medial and lateral plantar aspect as well as the
> dorsum of the foot.  She had good capillary refill and moderate valgus deformity with
> some loss of her arch.  This orthopedic doctor assessed her work capacity at sedentary
> work due to her complaint that she has pain and swelling with ambulation.  However, she
> also complains of pain and swelling with prolonged sitting, so that he recommended that
> she be able to get up and move around every hour.  He limited her standing to 30 minutes
> at a time.  <u>I believe that she still can sit for up to 6 hours, but must be in a job where it is
> possible for her to get up from that position and move around.  I believe it would be
> difficult for her to sustain repetitive foot control operation with right foot based on her
> sensory problems and pain.</u>  She claims that she needs to use a cane to ambulate, but there
> is no mention of her use of a cane by any of her physicians.  She is also diabetic and her
> diabetes is under good control.  Her diabetic foot exam does document the sensory loss in
> her right foot, but NO RECENT EXAMS document significant swelling in that right foot.
> Her description of her ADL's is consistent with her complaints of pain and swelling.
> However, she says that she quit her job because she was not given a promotion as
> promised.  She is obese at 5'4", approx 190#, and this likely contributes to her pain and
> swelling.  She also has moderate asthma and COPD.  She continues to smoke, but despite
> this, her asthma is fairy well controlled.  This problem does not further reduce her RFC.

Tr. 129-130 (emphasis added).

On April 5, 2001, Dr. Finnegan also completed a Physical RFC Assessment form.  Tr.

225-232.  Dr. Finnegan also found Warren could lift and/or carry 10 pounds occasionally, lift

and/or carry less than 10 pounds frequently, stand and/or walk for a total of at least 2 hours in an

8-hour workday, and sit for a total of about 6 hours in an 8-hour workday.  Tr. 226.  Like Dr.

Yoder, Dr. Finnegan found Warren was limited in her ability to push and/or pull in terms of her

lower extremities.  Dr. Finnegan also found Warren had to periodically alternate sitting and

standing to relieve pain or discomfort.  Tr. 227.  Dr. Finnegan opined:

> Ms. Warren's treating physician did find her complaints credible enough to limit her to
> sedentary work.  There are no recent exams with complaints of or findings of excessive
> swelling in her right ankle and foot.  There is no medical evidence to support the need of an
> assistive device for ambulation.  <u>Based on the medical evidence in file, Ms. Warren could
> be reasonably expected to perform sedentary level work which did not require the use of
> foot controls on the right side and that would allow her to get up and move around
> periodically during the day</u>.

Tr. 239 (emphasis added).  Both agency physicians opined Warren had to have a job that allowed

a stand/sit option and also found she was limited in her ability to push and/or pull with her lower

extremities.  This would indicate an erosion of the occupational base which would preclude the

ALJ from conclusively relying on the grids.  In fact Social Security Ruling 83-12 addresses this

issue.  Social Security Ruling 83-12 states in pertinent part:

> 1.  Alternate Sitting and Standing
>
> In some disability claims, the medical facts lead to an assessment of RFC which is
> compatible with the performance of either sedentary or light work except that the person
> must alternate periods of sitting and standing.  The individual may be able to sit for a time,
> but must then get up and stand or walk for awhile before returning to sitting.  Such an
> individual is not functionally capable of doing either the prolonged sitting contemplated in
> the definition of sedentary work . . . .  (Persons who can adjust to any need to vary sitting
> and standing by doing so at breaks, lunch periods, etc., would still be able to perform a
> defined range of work.)
>
> There are some jobs in the national economy– typically professional and
> managerial ones– in which a person can sit or stand with a degree of choice.  If an
> individual had such a job and is still capable of performing it, or is capable of transferring
> work skills to such jobs, he or she would not be found disabled.  However, most jobs have
> ongoing work processes which demand that a worker be in a certain place or posture  for
> at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are
> particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of
> unusual limitation of ability to sit or stand, a VS should be consulted to clarify the
> implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4.  *See also, Ragland v. Shalala*, 992 F.2d 1056, 1059 (10th

Cir. 1993)(even where sit or stand option alternation is a possibility, relying on the grids for light

or sedentary work is inappropriate, and the ALJ must consult a vocational expert before making a

determination at step five).   Accordingly, the Court will remand this case for the limited purpose

of having the ALJ consult with a VE to determine whether Warren retains the RFC to perform a

significant number of sedentary jobs given her limitations.  However, the Court expresses no

opinion as to the extent of Warren's impairments, or whether she is or is not disabled within the

meaning of the Social Security Act.  The Court does not require any result.  This remand simply

assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of

the case.

    A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**